# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | Criminal No.: 5:17-cr-00607-JMC-1 |
| v. ) | **ORDER AND OPINION** |
| ) | |
| Frederick Rivers, ) | |
| ) | |
| Defendant. ) | |

Defendant Frederick Rivers is a prisoner currently serving a sentence of 240 months in the Bureau of Prisons ("BOP"). (ECF No. 148.) This matter is before the court on Rivers' Motion for Compassionate Release. (ECF No. 176.) Specifically, Rivers seeks relief from his sentence because he believes that the risks to his health from COVID-19 and the unforeseen changes to mandatory minimum sentencing established by the First Step Act constitute "extraordinary and compelling" circumstances. (*Id.*) For the reasons set forth below, the court **DENIES** Rivers' Motion for Compassionate Release. (*Id.*)

## I. RELEVANT BACKGROUND

On March 27, 2018, Rivers pleaded guilty to one (1) count of conspiracy to possess with intent to distribute and to distribute five (5) kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. (ECF No. 110.) On November 27, 2018, the court sentenced Rivers to 240 months of imprisonment. (ECF Nos. 144, 148.)

On December 11, 2018, Rivers appealed his sentence to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"). (ECF No. 156.) The Fourth Circuit affirmed Rivers' sentence on August 2, 2019. (ECF No. 168.) On December 17, 2020, Rivers filed a Reduction in Sentence ("RIS") form, which was denied by the warden of his current facility, FCI Coleman Low,

1

on December 29, 2020. (ECF No. 176-1 at 2, 4.) Rivers then appealed his RIS denial via a Request for Administrative Remedy ("Form BP-229(13)") on January 7, 2021. (*Id.* at 6.) The warden denied the appeal on January 13, 2021. (*Id.* at 7.)[1]

Rivers subsequently filed the instant pro se Motion for Compassionate Release on February 1, 2021, contending that the significant risks of COVID-19 to his health, in addition to the unforeseen changes to the mandatory minimums outlined in the First Step Act, constitute "extraordinary and compelling circumstances" that warrant relief from his sentence.[2] (ECF No. 176.)

## II. LEGAL STANDARD

With limited exceptions, the court may not modify a sentence once it has been imposed. 18 U.S.C. § 3582(c). One exception is the doctrine of compassionate release, which permits the court to reduce a sentence in extraordinary and compelling circumstances. "As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify a criminal defendant's sentence for 'extraordinary and compelling reasons' 'upon motion of the Director of the Bureau of Prisons' or 'upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

---

[1] Based on Rivers' description of events, the court finds that he has exhausted all of his administrative remedies under 18 U.S.C. § 3582(c)(1)(A)(i). (*See* ECF Nos. 176, 176-1.)

[2] "Because he is a pro se litigant, Plaintiff's pleadings are construed liberally by the court and held to a less stringent standard than attorneys' formal pleadings." *Simpson v. Florence Cty. Complex Solicitor's Office*, Civil Action No.: 4:19-cv-03095-JMC, 2019 WL 7288801, at *2 (D.S.C. Dec. 30, 2019) (*citing Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)). "This, however, 'does not transform the court into an advocate' for Plaintiff; the court is not required to recognize Plaintiff's claims if there is clearly no factual basis supporting them." *Id.* (*quoting Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990)).

defendant's facility, whichever is earlier.'" *United States v. Feiling*, 453 F. Supp. 3d 832, 837 (E.D. Va. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)(i)).

"By its plain language, § 3582(c)(1)(A) requires defendants to first exhaust administrative remedies or wait thirty days after requesting that the warden of their facility file a motion for a sentence reduction; however, courts have waived this requirement when enforcing it would prove futile." *Id.*; *see also United States v. Kibble*, 992 F.3d 326, 330 n.2 (4th Cir. 2021).

"Extraordinary and Compelling Reason[s]" for release are—in part—defined in application notes (1)(A-D) of U.S.S.G. § 1B1.13. These reasons include whether (A) defendant suffers from a terminal illness, serious medical condition, serious functional or cognitive impairment, or deteriorating mental or physical health due to age which renders them unable to provide self-care; (B) defendant is a defined age or has served a defined percentage of their sentence; (C) certain family circumstances compel the court; or (D) there exists some "other" extraordinary and compelling reason. *See id*. The policy statement further provides that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason . . . ." U.S.S.G. § 1B1.13 cmt. n.3.

As the plain language of § 1B1.13 applies only to motions brought by the BOP on the defendant's behalf, it is not applicable to motions for compassionate release brought by the defendant on their own behalf. *United States v. McCoy*, 981 F.3d 271, 281-83 (4th Cir. 2020). While the policy statements "remain helpful guidance" in evaluating defendant's own motions, courts retain the discretion to make their own independent determinations of what constitutes an "extraordinary and compelling reason[]" under § 3582(c)(1)(A). *Id*; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020).

3

After discerning whether extraordinary and compelling reasons exist, the court considers 18 U.S.C. § 3553(a)'s sentencing factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the sentencing range established per the applicable guidelines; (5) any pertinent policy statement by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *Id*.

Finally, the court may consider whether a person presents a "danger to the safety of any other person or the community" under the balance of four (4) factors: (1) the nature and circumstances of the offense, with attention to the instant crime's level of violence or involvement with a controlled substance; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger posed to any person or the community upon the defendant's release. 18 U.S.C. § 3142(g).

### III.     ANALYSIS

**A. First Step Act**

Rivers is seeking relief from his sentence pursuant to the First Step Act because (1) the First Step Act expands the "safety valve limitation," and (2) the First Step Act reduces the mandatory minimum for his crime from twenty (20) to fifteen (15) years. (*See* ECF No. 176 at 1-2.)

The First Step Act made several changes to mandatory sentencing minimums – specifically, reducing the mandatory minimum sentence for a violation involving five (5) kilograms or more of cocaine after one (1) prior conviction for a serious drug felony from twenty (20) years to fifteen (15) years. 21 U.S.C. § 841(b)(1)(A). The First Step Act also expanded the

4

"safety valve" limitation in § 3553, which allows the courts to deviate below sentencing guidelines to prevent less culpable, low-level drug offenders from being subjected to the equally severe mandatory minimums applied to the repeat, more culpable drug offenders. 18 U.S.C. § 3553(f); s*ee* H.R. Rep. No. 103-460, at 4 (1994). While the First Step Act was not designed to be retroactive in most cases, *Congressional Research Service, The First Step Act of 2018* https://crsreports.congress.gov/product/pdf/R/R45558 (last visited June 16, 2021), the Fourth Circuit has used the First Step Act to grant relief when the disparity between the current sentence and the sentence as defined under the First Step Act is so large that it constitutes an extraordinary and compelling circumstance. *See McCoy*, 981 F.3d at 287.

Upon review, the court finds that Rivers does not qualify for a downward departure from the sentencing guidelines under § 3553's "safety valve limitation."  To qualify for a safety valve limitation, a defendant must meet several criteria, including the following: (1) the defendant must not have a prior 3-point offense, as determined under the sentencing guidelines, and (2) the defendant must not have possessed a firearm or other dangerous weapon in connection with the offense. 18 U.S.C. § 3553(f).

While Rivers has a 3-point offense from 2002 for conspiracy to possess with intent to distribute and to distribute cocaine, crack, and marijuana (ECF No. 146 at 32), this is considered a "stale conviction" as it is over fifteen (15) years old, and therefore is not considered for the safety valve limitation under the First Step Act. *See* U.S.S.G. § 4A1.2(e)(1); s*ee also Congressional Research Service* at 4. However, Rivers still does not qualify for a reduction under the safety valve limitation because he was in possession of three (3) firearms in connection with the drug offense. (ECF No. 146 at 16.) Count Four (4) of Rivers' Five-Count Indictment charges that Rivers possessed firearms in furtherance of a drug trafficking crime. (*Id.* at 5.) Although that Count was

dropped as part of a Plea Agreement (*Id.* at 10, 70), Rivers still received an additional two (2) points on his offense level for "Specific Offense Characteristics" relating to possession of the firearms. (*Id.* at 43.) Rivers admitted that everything in the "stash house" on Toney Bay Road belonged to him, including the cocaine, crack cocaine, heroin, and three (3) firearms discovered by law enforcement during the execution of a search warrant. (*Id.* at 25.) Rivers received a three-point reduction in his offense level computation by accepting responsibility for his criminal conduct. (*Id.* at 50-52.) The Fourth Circuit has held that a weapons enhancement on its own does not necessarily bar a defendant from bringing a safety valve reduction claim. *United States v. Bolton*, 858 F.3d 905, 914 (4th Cir. 2017). However, to qualify for the safety valve, Rivers still must show "by a preponderance of the evidence that the firearms were not connected to his drug distribution," which Rivers has failed to do because the weapons he admitted to owning were found in his stash house with the drugs for which he also accepted responsibility. (ECF No. 146 at 25.)[3]

The court also rejects the argument that the sentencing difference between twenty (20) to fifteen (15) years after the First Step Act is an extraordinary and compelling circumstance. The First Step Act authorizes the court to retroactively apply the Fair Sentencing Act of 2010, which shortened sentencing disparities between sentences for cocaine and crack cocaine. *See Congressional Research Service*. While this is the only category of sentencing that the First Step

---

[3] The Fourth Circuit points out in *United States v. Bolton* that to avoid a weapons enhancement in sentencing, the defendant must prove that "any connection between a firearm and an offense is clearly improbable," while to qualify for the safety valve exception, the defendant must prove that the firearm and offense are not connected "by a preponderance of the evidence." 858 F.3d at 914. The defendant (as the Appellant) in *Bolton* had the burden of proving by a preponderance of the evidence that the firearms in his house were unrelated to the drugs in his house. *Id.* The court found he did not meet that standard because he did not offer a credible explanation as to why both the guns and drugs were found in the same room in his home. *Id.* Likewise, Rivers has not offered evidence to explain by a preponderance of the evidence that the guns and drugs found in his stash house were not related to each other. (ECF No. 146. at 16.)

Act specifically designates as retroactive, the Fourth Circuit held in *McCoy* that a disparity between an initial sentence and a sentence Congress now deems appropriate under the First Step Act may be so great that it constitutes an "extreme and compelling circumstance" that would allow a court to reduce a sentence retroactively. 981 F.3d at 286. However, the court does not find this to be the case with Rivers.

In *McCoy*, the court relied on three (3) factors to determine if a sentence disparity was "extraordinary and compelling": (1) The sentence length and disparity under the new guidelines, (2) prior criminal history of the defendant, and (3) the defendant's rehabilitation. *Id.* at 274. McCoy had served seventeen (17) years of a nearly 35-year sentence for his involvement in a string of robberies. *Id.* at 277. McCoy was sentenced in 2004, before the First Step Act disallowed sentence stacking, meaning his sentences of three (3), seven (7), and twenty-five (25) years were all to be served consecutively and separately. *Id.* The court found that the harsh mandatory minimum of over thirty (30) years was not only unnecessary to "achieve the ends of justice," but also that McCoy's sentence would have been around sixteen (16) years shorter today due to the First Step Act's reform of mandatory minimums and sentence stacking. *Id.* at 278. This disparity, as well as the time served by McCoy, was the main focus of the court's analysis of extraordinary and compelling circumstances. *Id.* at 274. The court also noted that McCoy was only nineteen (19) years old at the time of the robberies and had no prior criminal record outside of a $120.00 fine for reckless driving. *Id.* at 278. McCoy had also taken significant steps toward rehabilitation as shown by "his many educational and vocational achievements and his payments of nearly $10,000" toward his restitution. *Id.*

There are several distinctions between Rivers and McCoy. Rivers, for example, has served less than three (3) years of his 20-year sentence. (*See* ECF No. 148.) Had Rivers been sentenced

7

today, he would have likely been sentenced to a mandatory minimum of fifteen (15) years instead of twenty (20). *See* 21 U.S.C. § 841(b)(1)(A). (*See also* ECF No. 146.) This 60-month disparity is a far cry from the over 200-month disparity that the *McCoy* court found extraordinary and compelling. *See McCoy*, 981 F.3d at 278. Rivers, unlike McCoy, also has a prior criminal history, including a conviction for conspiracy to possess with intent to distribute and to distribute cocaine, crack, and marijuana, for which Rivers spent nine (9) years in prison. (ECF No. 146.)

Rivers has taken steps toward rehabilitation by maintaining a good disciplinary record in prison and enrolling in Monetary and CPR/AED classes. (ECF No. 176 at 7-8.) Under § 3553(a), the court should consider rehabilitation as a factor in determining compassionate release. However, rehabilitation alone "shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Because rehabilitation is not on its own a compelling circumstance, and there are enough differences to distinguish Rivers' circumstances from the extraordinary and compelling circumstances brought about by the First Step Act in *McCoy*, the court rejects the argument that the sentencing difference from twenty (20) to fifteen (15) years entitles Rivers to relief from his sentence under § 3582.

### B. COVID-19

The Fourth Circuit has noted that, "[i]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *Feiling*, 453 F. Supp. 3d at 841. But the mere existence of COVID-19 in society, and the possibility that it may spread throughout a particular prison, cannot alone justify compassionate release. *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). In this

case, Rivers cannot demonstrate "extraordinary and compelling" reasons for his release because he has not shown a particularized susceptibility to COVID-19.

Rivers asserts that his history of gastric issues, his family history of colon issues, and his sleep apnea all leave him vulnerable and susceptible to contracting the virus. (ECF No. 176 at 6-7.) However, such conditions do not appear to subject him to a greater risk of complications from COVID-19, as the Centers for Disease Control ("CDC") does not list gastric issues, colon issues, or sleep apnea as conditions that place one at an increased risk of becoming "severely ill" from COVID-19. *People with Certain Medical Conditions*, https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 15, 2021); s*ee also Should People With Sleep Apnea Be Prioritize for the COVID-19 Vaccine*, https://www.verywellhealth.com/sleep-apnea-covid-vaccine-5114229 (last visited June 15, 2021).

Even assuming that Rivers is particularly vulnerable to COVID-19 because of his medical conditions, he has failed to show that he has a particularized risk of contracting the virus at FCI Coleman Low. Although 235 inmates have contracted COVID-19 at FCI Coleman Low since the pandemic began, there are currently no inmate COVID-19 cases and only two (2) staff COVID-19 cases at the facility. *See BOP COVID-19 Cases,* https://www.bop.gov/coronavirus/ (last visited July 7, 2021). FCI Coleman Low has also only had one (1) inmate and one (1) staff death attributed to COVID-19. *Id.*

**C. Constitutional Concerns**

Rivers claims that his sentence violates his Eighth Amendment and Due Process rights under the United States Constitution. (ECF No. 176 at 1.) However, there is no further elaboration on this Constitutional claim and no evidence that Rivers' rights are being violated as a result of his sentence. (*Id.*)

## IV. CONCLUSION

After a thorough review, the court **DENIES** Rivers' Motion for Compassionate Release. (ECF No. 176.)

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

July 9, 2021
Columbia, South Carolina